UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| CHRISTOPHER DALE GLENN, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | Case No. 1:24-cv-281 |
| v. | ) | |
| | ) | Judge Atchley |
| STEVE LAWSON, MR. KANIPES, LT. HARGIS, and UNKNOWN NURSE SUPERVISOR, | ) | Magistrate Judge Dumitru |
| *Defendants*. | ) | |

## MEMORANDUM & ORDER

Plaintiff, a transgender[1] inmate confined in Pennsylvania, filed a pro se complaint for violation of 42 U.S.C. § 1983 arising out of incidents during her prior incarceration in the Bradley County Jail. [Doc. 1]. Specifically, Plaintiff seeks relief based on her (1) failure to receive female undergarments, (2) administrative segregation confinement, and (3) failure to receive certain medications. [*Id.*]. Now before the Court is Defendant Lawson, Kanipes, and Hargis's[2] motion to dismiss the complaint for failure to state a claim upon which relief may be granted under § 1983 [Doc. 16], in support of which they filed a memorandum [Doc. 17]. Plaintiff did not file a timely response to this motion, *see* E.D. Tenn. L.R. 7.1, and she therefore waived any opposition to this dispositive motion. *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd mem.* 577 F.2d 740 (6th Cir. 1978); E.D. Tenn. LR 7.2. For the reasons set forth below, (1) Defendants' motion

---

[1] As the Court has previously noted [Doc. 6 p. 1 n.1], Plaintiff states in her complaint that she is a transgender woman and uses the corresponding female pronouns to refer to herself [*See, e.g.*, Doc. 1 p. 6]. Accordingly, the Court does so as well.
[2] The Court spells Defendants' names the way they spell them in their motion to dismiss and memorandum in support of that motion [Docs. 16, 17].

[Doc. 16] will be **GRANTED**; (2) Plaintiff's claims against Defendant Unknown Nurse Supervisor will be **DISMISSED**; and (3) this action will be **DISMISSED**.

I.     MOTION TO DISMISS

    A.     **Standard of Review**

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim for relief is implausible when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. In considering a motion to dismiss, a court must take all factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

    B.     **Allegations**

In her complaint, Plaintiff claims that after her transfer from a Pennsylvania jail to the Bradley County Jail, she received female clothing, but "since [she] was transgender with her original male body parts," Defendant Hargis denied her female undergarments "regardless of whether she had breasts or not." [Doc. 1 p. 6].

Additionally, Plaintiff claims that she told the nursing staff and a nursing supervisor that she needed medication and signed "several release[s] of information" regarding her records from Pennsylvania, but unspecified individuals "denied her medication for her hormone replacement and all her depression medication except Zyprexa." [*Id.*]. A nurse informed Plaintiff that an unspecified nurse supervisor refused to provide Plaintiff medications that Plaintiff had received for two years in Pennsylvania, and unspecified staff and Defendants told Plaintiff "that[']s not the law down here in Tennessee." [*Id.* at 6–7].

According to Plaintiff, "Defendant Steve Lawson is responsible for the training of his staff to prevent discrimination and mistreatment of transgender" inmates. [*Id.* at 7]. Plaintiff therefore claims that even though Defendant Lawson "was not directly involved," he is responsible for his

2

staff's deliberate indifference to her medical needs, safety, and security, and discriminatory acts "via respondeat superior." [*Id.*].

Plaintiff then asserts that Defendant Kanipes "is responsible for discrimination" because he housed her in administrative segregation, rather than protective custody, for nine days. [*Id.*]. Plaintiff specifically asserts that Defendant Kanipes did this because she is transgender, and the Bradley County Jail had "no policy . . . on the treatment and handling of transgenders." [*Id.*].

As to Defendant Unknown Nurse Supervisor, Plaintiff alleges that this Defendant was deliberately indifferent to her medical needs through her denial of Plaintiff's medications. [*Id.*]. According to Plaintiff, this caused her "serious psychological, physical, and emotional pain from hormone withdrawal and serious physical side effects from lack of her medication for over a month." [*Id.*]. Plaintiff also claims that the denial of her medications was discriminatory. [*Id.* at 8].

Plaintiff has sued Sheriff Steve Lawson and Lt. Kanipes in their individual and official capacities, and Lt. Hargis and an Unknown Nurse Supervisor in their individual capacities. [*Id.* at 2–3]. Plaintiff seeks compensatory, punitive, injunctive, and declaratory relief [*Id.* at 10].

### C. Analysis

#### 1. Official Capacity Claims

As set forth above, Plaintiff has sued Defendants Lawson and Kanipes in their official capacities. [*Id.* at 2]. These official capacity claims are actually against these Defendants' employer, Bradley County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.5 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

For Plaintiff's complaint to state a plausible § 1983 claim against Bradley County, Plaintiff must allege facts from which this the Court can plausibly infer that this municipality's policy or

3

custom caused a violation of her constitutional rights. *Monell*, 436 U.S. at 708 (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of its official policies or established customs").

The only allegations from Plaintiff's complaint that the Court can construe to assert municipal liability claims associated with Defendants Lawson and Kanipes are (1) Defendant Lawson failed to train Bradley County Jail employees "to prevent discrimination and mistreatment of transgender individuals"; and (2) Defendant Kanipes housed Plaintiff in administrative segregation, rather than protective custody, for nine days because she is transgender and Bradley County Jail lacked a housing policy regarding transgender inmates. [*Id.* at 7]. None of these allegations allow the Court to plausibly infer that Bradley County may be liable under § 1983.

First, Defendant Lawson's alleged failure to train, inadequate training may serve as the basis for § 1983 liability against a municipality only where it reflects a "deliberate" or "conscious" choice. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To prevail on such a claim, a plaintiff must identify a particular deficiency in the training program and prove that the identified deficiency was the actual cause of her constitutional injury. *Id*. at 390–91. It is not enough that a particular officer was inadequately trained, that there was negligent administration of an otherwise adequate program, or that the conduct resulting in injury could have been avoided by more or better training. *Id*.; *see also Carey v. Helton*, 70 F. App'x 291, 294 (6th Cir. 2003).

Plaintiff provides no facts from which the Court can find that any lack of training regarding transgender inmates on the part of Bradley County was deliberate or conscious. Rather, it is apparent that Plaintiff merely speculates that additional or better training of Bradley County officers regarding transgender inmates could have prevented the incidents underlying her

4

complaint. Plaintiff's conclusory allegations of a lack of training fail to state a plausible claim for § 1983 liability. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Sawyer v. Boone Cnty.*, No. 2:22-CV-00071-GFVT, 2024 WL 4860828, at *9 (E.D. Ky. Nov. 21, 2024) (finding that the plaintiff's "conclusory allegation that the identified defendants 'refused to adequately train or supervise' any of their subordinates fail[ed] to state a claim") (citations omitted).

Likewise, Plaintiff's conclusory assertion that the Bradley County Jail lacked a policy regarding housing transgender inmates fails to allow the Court to plausibly infer that Bradley County may be liable under § 1983. "To succeed on a municipal-liability claim under an 'inaction' theory, a plaintiff must show '(1) the existence of a clear and persistent pattern of' unconstitutional conduct; (2) 'notice or constructive notice' on the part of the municipality; (3) the municipality's 'tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction'; and (4) 'that the [municipality's] custom was the 'moving force' or direct causal link in the constitutional deprivation.'" *Franklin v. Franklin Cnty.*, 115 F.4th 461, 472 (6th Cir. 2024) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Plaintiff's complaint contains no factual allegations to support any of these required elements of an "inaction" municipal liability claim.

Accordingly, Plaintiff's complaint fails to state a plausible § 1983 claim against Defendants Lawson or Kanipes in their official capacities, and these claims are **DISMISSED**.

    2.    **Defendant Lawson**

As set forth above, in her complaint, Plaintiff seeks to hold Defendant Lawson liable under § 1983 based on her assertion that he is liable for acts of Bradley County Jail employees under the theory of "respondeat superior," and she specifically states that he was not personally involved in

5

any of the incidents underlying her complaint. [*Id.* at 7]. It is well-established that Defendant Lawson may not be liable for Plaintiff's claims (1) under the theory of respondeat superior, *see Iqbal*, 556 U.S. at 676 (noting that "our precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior"), or (2) where he is not personally involved in the incidents underlying the claims. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

Accordingly, Plaintiff's complaint fails to state a plausible § 1983 claim against Defendant Lawson in his individual capacity, and this Defendant is **DISMISSED**.

### 3. Defendant Kanipes

Plaintiff's individual capacity claim against Defendant Kanipes asserts that he discriminated against her by housing her in administrative segregation rather than protective custody for nine days because she is transgender and Bradley County Jail had "no policy . . . on the treatment and handling of transgenders." [*Id.*].

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr.*

*For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

Thus, the "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Ctr. For Bio-Ethical Reform*, 648 F. 3d at 379 (quoting *Scarborough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)). A plaintiff alleging disparate treatment must be similarly situated to the comparative individuals in all relevant respects. *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (providing that "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it'" (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998))). The mere fact that other inmates were treated differently is not sufficient to support an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 114 S. Ct. 127 (1993); *Maye v. Klee*, 915 F. 3d 1076, 1085 (6th Cir. 2019) (holding that an equal protection claim requires the plaintiff to establish both discriminatory intent and differential treatment).

First, Plaintiff's complaint fails to allow the Court to plausibly infer that her nine days in administrative segregation amounted to disparate treatment. Specifically, Plaintiff does not set forth any facts from which the Court can plausibly infer that Defendant Kanipes treated other inmates who were not transgender, but for whom the Bradley County Jail also did not have a housing policy, differently than he treated Plaintiff. *Nali v. Ekman,* 355 F. App'x 909, 913 (6th Cir. 2009) (stating that a claim for race discrimination in prison discipline must be supported by

allegations "that the people not disciplined were similarly situated and of a different race" to state an equal protection claim).

Moreover, even if Plaintiff had established the threshold requirement of disparate treatment, as transgender inmates are not a suspect class, rational basis applies to Plaintiff's equal protection claim. *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 486 (6th Cir. 2023) (providing that "neither the Supreme Court nor [the Sixth Circuit] has recognized transgender status as a suspect class. Until that changes, rational basis review applies"), *cert. dismissed in part sub nom*. *Doe v. Kentucky*, 144 S. Ct. 389 (2023), and *cert. granted sub nom*. *United States v. Skrmetti*, 144 S. Ct. 2679 (2024). And Plaintiff's complaint does not contain any facts to support a plausible inference that the decision to house Plaintiff in administrative segregation for nine days lacked any rational basis, such as keeping Plaintiff safe from inmates who may seek to harm transgender inmates.

Thus, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983 as to Defendant Kanipes in his individual capacity, and he will be **DISMISSED**.

    **4.**  **Defendant Hargis**

Plaintiff claims that Defendant Hargis denied her female undergarments, "regardless of whether she had breasts or not." [*Id.* at 6]. In evaluating whether Plaintiff's complaint states a plausible § 1983 claim arising out of the denial of female undergarments, the Court presumes that Plaintiff is a detainee and therefore analyzes this claim under the Fourteenth Amendment. *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021). For Plaintiff's complaint to state a plausible claim for violation of her Fourteenth Amendment rights arising out of Defendant Hargis's denial of female undergarments to her, Plaintiff must set forth facts from which the Court can infer that Defendant Hargis "acted deliberately (not accidentally), [and] also recklessly 'in the face of an

8

Case 1:24-cv-00281-CEA-MJD    Document 23    Filed 05/21/25    Page 8 of 11    PageID #: 107

unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (citations omitted).

Plaintiff's complaint does not allow the Court to plausibly infer that Defendant Hargis ignored any risk of harm to her in denying her female undergarments. First, as Plaintiff states in her complaint that she still has her "male body parts," it appears that she had no need for female undergarments. But even if the Court liberally construes Plaintiff's complaint in her favor to allege that she did not receive a bra despite having breasts, Plaintiff does not set forth any facts suggesting that this caused any unjustifiable risk of harm to her. As such, Plaintiff's complaint does not suggest that Defendant Hargis violated her constitutional rights, and he is **DISMISSED.**

### D. Conclusion

"Numerous cases have held that where a plaintiff fails to respond to a motion to dismiss, his or her claims are deemed abandoned." *Williams v. Chase Bank*, No. 15-10565, 2015 WL 4600067, at *3 (E.D. Mich. July 29, 2015); *Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838–39 (E.D. Mich. 2016) (collecting cases). In addition, Defendants are entitled to dismissal on the merits. Accordingly, Defendants' motion to dismiss [Doc. 16] will be **GRANTED.**

### II. DEFENDANT UNKNOWN NURSE SUPERVISOR

As set forth above, Plaintiff also named an unknown Nurse Supervisor as a Defendant in her complaint, who she alleges denied her medical care while she was in Bradley County Jail. [Doc. 1 p. 3, 7–8]. As the Court will grant the other Defendants' motion to dismiss [Doc. 16], only Plaintiff's allegations regarding Defendant Unknown Nurse Supervisor will remain herein. However, as Plaintiff failed to name this Defendant, she has not commenced a civil action against her. *See Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *5 (E.D. Tenn. Nov. 4, 2009) ("A civil action cannot be commenced against a fictious party such as an unknown

John Doe.") (citation omitted); *Dunn v. Paducah Int'l Raceway*, 599 F. Supp. 612, 613 n.1 (W.D. Ky. 1984) (providing that "until an amendment adding additional defendants has been permitted by the court," allegations against unknown defendants "are merely 'surplusage[.]'") (citation omitted).

Plaintiff alleges that the conduct giving rise to her claims occurred between March 26, 2024, and April 26, 2024. [Doc. 1 at 5]. As more than a year has passed since the incidents underlying the Complaint, it is too late for Plaintiff to amend her complaint to add the name of the Unknown Nurse Supervisor. [Doc. 1 p. 4]; *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (providing that district courts apply state statutes of limitations § 1983 claims); Tenn. Code Ann. § 28-3-104(a)(3) (setting forth Tennessee's one-year statute of limitations for § 1983 actions); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that adding new, previously unknown Defendants in the place of Doe defendants is not equivalent to substituting parties, but rather amounts to addition of parties, and that Rule 15(c) offers no remedy to a plaintiff seeking to do so after the statute of limitations has passed). Moreover, the Court's August 19, 2024, Order [Doc. 5] advised Plaintiff that if she failed to "amend [her] complaint to specifically name any unidentified (i.e., Jane or John Doe) parties within the applicable statute of limitations, all claims against those parties may be subject to dismissal as untimely." [*Id.* at 2].

Plaintiff was on notice of the need to amend to identify the Jane Doe defendant within the applicable statute of limitations and failed to do so. Accordingly, the Court will not address Plaintiff's allegations against this Defendant on the merits, and she will be **DISMISSED**.

### III. CONCLUSION

For the reasons set forth above:

1. Defendants' motion to dismiss [Doc. 16] is **GRANTED**;

2. Defendant Unknown Nurse Supervisor is **DISMISSED**;

10

3. This action will be **DISMISSED**; and

4. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**